UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STEPHRIC N. GARRETT | * | CIVIL ACTION |
| VERSUS | * | NO. 20-1043 |
| SHERIFF RANDY SMITH | * | SECTION "T"(2) |

## REPORT AND RECOMMENDATION

Plaintiff Stephric N. Garrett filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against Defendant Sheriff Randy Smith based on allegations that his pretrial conditions of confinement violated the Fourteenth Amendment. This matter was referred to the undersigned magistrate judge for a Report and Recommendation. 28 U.S.C. 636(b)(1)(B); E.D. La. L.R. 73.2(A).

## I.   BACKGROUND

### A.   Allegations in the Complaint and § 1983 Fact Statement

Plaintiff's complaint alleges that he was arrested and held in a 10' x 13' holding cell (later described as a 10' x 10' cell) at St. Tammany Parish Jail for fifteen days (November 13-28, 2019), at times with nineteen other people. ECF No. 1, at 4; ECF No. 7, at 1. Plaintiff alleges that he was forced to sleep on the floor and not provided a mat. ECF No. 1, at 4. His thermals were taken away, but he was provided a blanket from 11 pm until 6 am. *Id.* The only time he was allowed out of the cell was to shower twice a week. *Id.* Other than the cup of water provided with meals, the only water to drink came from a low pressure sink above the toilet. *Id.* The cell was cold, allegedly between 27°F–40°F. *See* ECF No. 1, at 4; ECF No. 7, at 1.

**B.  *Spears* Hearing Testimony**

On June 29, 2020, I conducted a telephone conference in this matter.  Participating were plaintiff, *pro se*, and Chadwick Collings, counsel for defendant Sheriff Randy Smith.  Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny.  ECF No. 11.

As to the conditions of confinement, Plaintiff reiterated the information in his Complaint and Fact Statement.  *See* ECF Nos. 1, 7.  He indicated he had no socks or underwear, just a top and bottom with slippers.  He clarified that he was served two hot meals and one sandwich each day, with one cup of water at each meal.  Plaintiff does not contend that he was placed in the holding cell as punishment nor that he was treated differently than any other pretrial detainee.

Plaintiff testified that Sheriff Smith was not personally involved in his arrest, and he has no knowledge of any involvement of Sheriff Smith in the underlying facts.  Rather, Plaintiff sued him as the supervisor of the whole department.  Plaintiff testified that he never saw Sheriff Smith or spoke with him during his confinement.  Although he did not complain to Sheriff Smith, he did complain to the guards.  He does not remember the names of any guards to whom he complained.

Plaintiff was aware of the existence of a grievance procedure, but he did not file any grievances because he had no pens or other means to do so.  *See also* ECF No. 1, Section II(A) & (B), at 2.  He stated that the electronic kiosk was not available in the holding cell.  Plaintiff acknowledged that, after he was transferred out of holding, he could have filed a grievance, but he did not.

Plaintiff testified that he sustained bruises on his hips from sleeping on the concrete, he could only sleep in 45 minute intervals, his toes and fingers would go numb and tingle, and he

developed rashes on his left leg and arm.  He also stated that he was dehydrated, developed hemorrhoids, urinated on himself three times, and was only allowed to shower twice a week.  He also testified that he started coughing and developed a runny nose.

Plaintiff's complaints relate only to detention in the holding cell from November 13–28, 2019, not to any conditions of confinement after November 28, 2019.

## II.   LEGAL STANDARDS

### A.   Statutorily Required Screening

As soon as practicable after docketing, the court shall review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[1]  A prisoner's *in forma* pauperis complaint that fails to state a claim may be dismissed *sua sponte* at any time if the court determines that the complaint is frivolous or malicious.[2]  A claim is frivolous if it "lacks an arguable basis in law or fact."[3]  A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[4]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[5]  A court may not dismiss a claim simply because the facts are "unlikely."[6]

---

[1] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).
[2] 28 U.S.C. § 1915(e)(2)(i)–(ii); 42 U.S.C. § 1997e(c)(1); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).
[3] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).
[4] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).
[5] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (citation omitted).
[6] *Id.*

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[7]  In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably run afoul" of the other.[8]  If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[9]  "[W]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[10]

### B.  The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[11]  The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[12]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[13]  The information elicited at such an evidentiary hearing is in the nature of an amended

---

[7] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[8] *Moore*, 976 F. 2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).
[9] *Id.*
[10] *Id.*
[11] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).
[12] *Id.*
[13] *Davis v. Scott*, 157 F.3d 1003, 1005–06 (1998).

complaint or a more definite statement under Rule 12(e).[14]  "Upon development of the actual nature

of the complaint, it may also appear that no justiciable basis for a federal claim exists."[15]

The court may make only limited credibility determinations in a *Spears* hearing, and may

consider and rely upon documents as additional evidence, as long as they are properly identified,

authentic and reliable.[16]  "The Court should allow proper cross-examination and should require

that the parties properly identify and authenticate documents.  A defendant may not use medical

records to refute a plaintiff's testimony at a *Spears* hearing."[17]  Medical records of sick calls,

examinations, diagnoses, and medications may, however, rebut allegations of deliberate

indifference.[18]

## III.    LAW AND ANALYSIS

### A.    Required Elements of § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or

statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any . . . person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an action
> at law . . . .[19]

"The purpose of § 1983 is to deter state actors from using the badge of their authority to

deprive individuals of their federally guaranteed rights and to provide relief to victims if such

---

[14] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).

[15] *Spears*, 766 F.2d at 182.

[16] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).

[17] *Id.* (citing *Wilson*, 926 F.2d at 482; *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990)).

[18] *Gobert v. Caldwell*, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Bejaran v. Cruz*, 79 F. App'x 73, 74 (5th Cir. 2003))).

[19] 42 U.S.C. § 1983.

deterrence fails."[20]  Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[21]  A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;

(2) that occurred under color of state law; and

(3) was caused by a state actor.[22]

In this case, Plaintiff's complaint, as expounded by his *Spears* testimony explaining the factual basis of his claims, should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1).[23]  His allegations fail to establish a cognizable § 1983 claim of violation of constitutional rights, even under the broadest reading of his claims.[24]

## B.  <u>Plaintiff Fails to State a Claim for Sheriff Smith's Personal or Supervisory Liability</u>

Plaintiff named Defendant Sheriff Randy Smith as defendant based solely on his supervisory positions.  Plaintiff testified at the *Spears* hearing that the Sheriff was not personally involved in his arrest or detention.  Indeed, Plaintiff never saw or spoke to Sheriff Smith.  Rather, he named the Sheriff as a defendant based on his supervisory responsibilities over the facility.

---

[20] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).

[21] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[22] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

[23] Although it appears that Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) (ECF No. 1, at 2 (Section II (A) & (B))), that is an affirmative defense and is not a proper basis for *sua sponte* dismissal after service and answer.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *e.g.*, *Hicks v. Garcia*, 372 F. App'x 557, 557–58 (5th Cir. 2010); *see also Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002) (stating exhaustion of administrative remedies is now required for all actions brought with respect to prison conditions whether under § 1983 or other federal law); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (holding that an inmate must exhaust available administrative remedies even if administrative remedy does not provide requested relief).

[24] The court must "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'" *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

"There is no respondeat superior liability under section 1983."[25]   To hold a defendant personally liable under § 1983, plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."[26]   As stated above, plaintiff has failed to establish that Sheriff Smith was personally involved in any act causing the deprivation of his constitutional rights.   Sheriff Smith, therefore, cannot be held liable under § 1983 pursuant to a theory of respondeat superior simply because the persons overseeing plaintiff's detention were in his employ or under his supervision.[27]

A supervisory official may be held liable for his subordinates' actions under § 1983 only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.[28] To the extent Plaintiff is purporting to assert claims against Sheriff Smith in his official capacity, such "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[29]   In other words, an official capacity suit is essentially a claim against the local governmental body itself.   However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The

---

[25] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1114–15 (5th Cir. 2006).

[26] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox*, 281 F. App'x at 391; *Kohler*, 470 F.3d at 1114–15.

[27] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).

[28] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

[29] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[30]

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[31]  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.[32]

Plaintiff has not alleged that his constitutional rights were violated as a result of any policy or custom, much less identify such policy or custom.  Nor does Plaintiff allege that Sheriff Smith served as the policymaker for any policy at issue.  Accordingly, plaintiff has thus failed to establish the essential elements of an official capacity claim or claim of personal involvement of Defendant Sheriff Smith in any act causing the alleged deprivation of his constitutional rights.  Thus, his § 1983 claim should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[33]

### C.  Plaintiff Asserts a Conditions of Confinement Claim

"Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'"[34]  Although a prisoner's rights may be diminished by the needs and exigencies of the institutional environment, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country."[35]  "Prison walls do not form a barrier separating prison inmates from the protections of

---

[30] *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations and quotation omitted).
[31] *Colle v. Brazos Cty.*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009).
[32] *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.
[33] 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).
[34] *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).
[35] *Id.* at 555-56.

the Constitution."[36]   A prisoner's constitutional protections "'specifically include the Eighth Amendment's prohibition against cruel and unusual punishment.'"[37]

In evaluating the constitutionality of conditions or restrictions of pretrial detention, the proper inquiry is whether the conditions amount to punishment of the detainee.[38]   The Supreme Court has held that a particular condition or restriction of pretrial detention does not constitute "punishment" if it is reasonably related to a legitimate governmental objective.[39]   "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."[40] Additionally, "Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility."[41]

A pretrial detainee may prove a constitutional violation either by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission.[42]   A condition of confinement is a "constitutional attack on general conditions, practices, rules, or restrictions of confinement."[43]   An episodic act or omission inquiry is appropriate where

---

[36] *Turner v. Safley*, 482 U.S. 78, 84 (1987).
[37] *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (citing *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998)).
[38] *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).
[39] *Id.* at 539; *see also Talib*, 138 F.3d at 214 ("[C]ourts will uphold a prison regulation claimed to infringe a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'") (quoting *Turner*, 482 U.S. at 89).
[40] *Wolfish*, 441 U.S. at 539.
[41] *Id.* (citations omitted).
[42] *Cadena v. El Paso Cty.*, 946 F.3d 717, 727 (5th Cir. 2020) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996)).
[43] *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (quoting *Hare*, 74 F.3d at 644).   To prevail on a claim of unconstitutional conditions of confinement, a plaintiff must show: "(1) 'a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive'; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the inmate's] constitutional rights." *Cadena*, 946 F.3d at 727 (quoting *Duvall v. Dallas Cty.*, 631 F.3d 203, 207 (citing *Hare*, 74 F.3d at 645)).

the "complained-of harm is a particular act or omission of one or more officials."[44]  "[T]he detainee complains first of a particular act, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."[45] In this case, the plaintiff's written complaint and responses and *Spears* testimony do not lead to an inference that the allegedly unconstitutional conditions "were the result of a prison official's act either 'implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice' or that the 'official's acts or omissions were sufficiently extended or pervasive . . . to prove an intended condition or practice.'"[46]  Thus, the conditions in this case will be analyzed as episodic acts or omissions.[47]

Whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.[48]  The Fifth Circuit has held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.[49]

---

[44] *Id.*

[45] *Id.*

[46] *Desroche v. Strain*, 507 F. Supp. 2d 571, 579 (E.D. La. 2007) (quoting *Hare*, 74 F.3d at 645).  "If a pretrial detainee is unable to . . . establish[] [a] rule or restriction, then he must show that the jail official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice . . . [i]n the absence of such a condition, practice, rule, or restriction, a jail official's act or omission can give rise to constitutional liability only if he was culpable . . . ."  *Hare*, 74 F.3d at 645 (holding that episodic acts or omissions require showing of deliberate indifference).

[47] *Desroche*, 507 F. Supp. at 579 (analyzing as episodic acts or omissions a pretrial detainee's allegations of an overcrowded and unsanitary holding tank with dirty drinking water, no mattress, and limited access to a toilet); *see also Davis v. Gusman*, No. 09-7195, 2010 WL 1727825, at *54 (E.D. La. April 13, 2010).

[48] *Hare*, 74 F.3d at 650; *see also McCarty v. Zapata Cty.*, 243 F. App'x 792, 794, at *1 (5th Cir. 2007) (citing *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999)).

[49] *Hare*, 74 F.3d at 650.

### D.  Analysis of Episodic Acts or Omissions under Eighth Amendment Standards

The Constitution does not mandate comfortable prisons.[50]  Nor does the Constitution "require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be."[51]  Prison conditions may be restrictive—even harsh—without violating the Eighth Amendment.[52]  A prisoner's rights are subject to "restrictions imposed by the nature of the regime to which they have been lawfully committed."[53]  Additionally, "the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loathe to intervene when detainees complain of trivial inconveniences."[54]

After incarceration, it is "only the 'unnecessary and wanton infliction of pain'" that constitutes cruel and unusual punishment forbidden by the Eighth Amendment.[55]  The Eighth Amendment requires prison officials to "provide humane conditions of confinement" (i.e., "adequate food, clothing, shelter, and medical care, and . . . 'reasonable measures to guarantee the safety of the inmates.'").[56]  Only deprivations denying a prisoner of "basic elements of hygiene"[57] or the "minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.[58]

---

[50] *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) (rejecting argument that double-celling prisoners in excess of design capacity constituted Eighth Amendment violation).

[51] *McAllister v. Strain*, No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009).

[52] *Rhodes,* 452 U.S. at 347.

[53] *Wolff v. McConnell*, 418 U.S. 539, 556 (1974); *see also Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998) ("[C]ourts will uphold a prison regulation claimed to infringe a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'") (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

[54] *Allen v. St. Tammany Parish*, No. 17-4091, 2018 WL 558503, at *3 (E.D. La. Jan. 2, 2018).

[55] *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).  In *Estelle v. Gamble*, the Court noted that it has held repugnant to the Eighth Amendment punishments that are incompatible with "'the evolving standards of decency that mark the progress of a maturing society' or which 'involve the unnecessary and wanton infliction of pain.'"  *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

[56] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

[57] *Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999).

[58] *Farmer*, 511 U.S. at 832.

A pretrial detainee alleging episodic acts or omissions condition of confinement claim under the Fourteenth Amendment must satisfy tests for both objective and subjective components of that claim; the same tests as a convicted inmate alleging an Eighth Amendment violation.[59]  For the objective component, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm" or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendant's actions.[60]  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim."[61]  For the subjective component, the prison official must have acted with a sufficiently culpable state of mind.[62]  A prison official's culpable state of mind is one of deliberate indifference, which is defined as knowingly disregarding an excessive risk to inmate health or safety.[63]  The subjective component need not be examined if the plaintiff does not objectively demonstrate a sufficiently extreme deprivation of minimal civilized measure of life's necessities.[64]

### 1.  The Objective Requirement

"The Supreme Court has made clear that the standards against which a court measures prison conditions are 'the evolving standards of decency that mark the progress of a maturing

---

[59]*Desroche v. Strain*, 507 F. Supp. 2d 571, 579 (E.D. La. 2007) (citing *Farmer*, 511 U.S. at 847); *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (stating that for plaintiff to demonstrate an Eighth Amendment claim based on prison conditions, a plaintiff must show a sufficiently serious deprivation, and must show that the relevant official or officials acted with deliberate indifference to inmate health or safety); *see Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) ("Finding no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human rights . . . we conclude that a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*.").

[60] *Farmer*, 511 U.S. at 834.

[61] *Davis*, 157 F.3d at 1006 (citing *Hudson*, 503 U.S. at 9); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (requiring the inmate to allege a sufficiently serious deprivation, i.e., a denial of "the minimal civilized measure of life's necessities"); *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (stating that the alleged deprivation must be "objectively, sufficiently serious" (citing *Farmer*, 511 U.S. at 834).

[62] *Farmer*, 511 U.S. at 834; *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999).

[63] *Farmer*, 511 U.S. at 837 ("A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety.").

[64] *Davis*, 157 F.3d at 1006.

society' and not the standards in effect during the time of the drafting of the Eighth Amendment."[65] The objective factor prong requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.[66]

The Court employs a "totality of the circumstances" test to assess Eighth Amendment claims based on prison conditions.[67]  There is clearly a point beyond which one's conditions of confinement are so egregious as to render them unconstitutional.[68]   Other conditions of confinement may not establish a violation individually, but may do so in combination with other conditions when those combined conditions have a mutually enforcing effect that produces the deprivation of a single identifiable human need, such as food, warmth, or exercise, for example a low cell temperature at night combined with a failure to issue blankets.[69]

"'[A]bsent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment.'"[70]  Likewise, the Constitution does not require daily, or even weekly showers.[71]  Nor does the mere denial of exercise or outdoor recreation arise to the level of

---

[65] *Gates v. Cook*, 376 F.3d 323, 332–33 (quoting *Estelle v. Gamble*, 429 US. 97, 102 (1976)).

[66] *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

[67] *Rhodes v. Chapman*, 452 U.S. 337, 363 (1981) (Prison "[c]onditions, . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities").

[68] *See, e.g.*, *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (holding that confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional); *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (stating that continual conditions of "filthy, sometimes feces-smeared cells" may be unconstitutional).

[69] *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

[70] *Baqer v. St. Tammany Parish Gov't*, No. 20-980-WBV-JCW, 2020 WL 1820040, at *12 (E.D. La. Apr. 11, 2020) (quoting *Chavera v. Allison*, No. 1:08cv256-JMR, 2009 WL 1011157, at *5 (S.D. Miss. Apr. 15, 2009) (citing *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, No. 2:07cv167-MTP, 2008 WL 53269, at *2 (S.D. Miss. Jan. 2, 2008); *Robertson v. Coahoma Cty.*, No. 2:07CV78-SA-SAA, 2008 WL 3334091, at *5 (N.D. Miss. Aug. 6, 2008)).

[71] *See Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period do not constitute cruel and unusual punishment); *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment.").

an Eighth Amendment violation.[72]  Even being forced to live in a filthy or unsanitary cell does not automatically violate the Constitution.[73]  "A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."[74]  Thus, appellate courts reject § 1983 claims when the length of confinement in even filthy, overcrowded cells is of short duration.[75]  Courts in this district[76] and elsewhere[77] likewise regularly reject § 1983 claims based on prison conditions after assessing the combination of the particular conditions at issue and length of confinement in those conditions.

---

[72] A prisoner has no protected liberty interest in specific type or any particular amount of time of outdoor recreational opportunities, and the deprivation of exercise is not a per se constitutional violation.  *See Lewis v. Smith*, No. 00-31371, 2001 WL 1485821, at * 1 (5th Cir. Nov. 13, 2001) (citing *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982)).  In order to succeed on a claim of denial of exercise, the prisoner must show that the denial adversely affected his health.  *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir. 1977); *see also Hernandez v. Velasquez*, 522 F.3d 556, 560–61 (5th Cir. 2008) (granting summary judgment for defendants on claim based on denial of outdoor and out of cell exercise for 13 months where there was no showing of "substantial risk of serious harm" as plaintiff did not "clearly evince" a serious medical need).

[73] *Taylor v. Stevens*, 946 F.3d 211, 219–20 (5th Cir. 2019).

[74] *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) (addressing unconstitutional punitive isolation of 4 to 11 prisoners crowded into 8' x 10' windowless cells for indeterminate time periods, with no furniture other than a source of water, a toilet that could only be flushed from outside of the cell, and mattresses that were given each night and removed each morning).

[75] *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (holding that three days in a filthy crisis management cell with blood on walls and excrement and old food on the floor was insufficient to objectively demonstrate a sufficiently extreme deprivation, particularly when plaintiff was given cleaning supplies) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Shakka v. Smith*, 71 F.3d 162, 167–68 (4th Cir. 1995) (holding no Eighth Amendment injury when prisoner was given water and cleaning supplies but denied a shower for three days after having human excrement thrown on him); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (noting the intolerable conditions lasted not more than 24 hours and, therefore, no constitutional violation was found); *Daigre v. Maggio*, 719 F.2d 1310, 1312–13 (5th Cir. 1983) (holding 10-day administrative lockdown that subjected prisoners to "dirty and filthy" mattresses, laundered blankets at most once a week or even up to three weeks, and no soap to wash hands with between using the toilet and eating meals was not sufficient to establish constitutional deprivation where some measure of hygiene was provided by available water and utensils at meals)).

[76] *See, e.g.*, *Magee v. Crowe*, No. 09-3142, 2010 WL 630011, at *8–9 (E.D. La. Feb. 19, 2010) (stating that a "short-term sanitation . . . problem, although admittedly unpleasant, does not amount to a constitutional violation" and holding that placement in isolation cell for 21 days with a hole in the floor for a toilet, which could only be flushed from outside and was flushed only once or twice a day, which backed up into the cell while prisoner was sleeping, and in which prisoner could only shower twice in those 21 days, did not constitute an extreme deprivation).

[77]  *See, e.g.*, *Crowley v. Austin*, No. 18-431, 2018 WL 3381494, at *3 (W.D. La. May 29, 2018) (holding that 3 days in holding cell without bed, running water or toilet not sufficient to rise to the level of constitutional violation); *Duvall v. Burns*, No. 6:15cv564, 2016 WL 7664308, at *1, *5–7 (E.D. Tex. Oct. 24, 2016) (ruling that a weekend in cell where he could not take a shower or flush the toilet, but was supplied drinking water with meals, failed to satisfy the objective component for an Eighth Amendment violation); *Eady v. Head*, No. 04-0648, 2006 WL 2663776 (W.D. Tex. Sept. 15, 2006) (holding two days without shower and exposure to the foul smell of a backed-up shower did not show deliberate indifference to the plaintiff's basic human needs).

14

Only in extreme circumstances do unsanitary conditions rise to the level of a constitutional deprivation. For instance, in *Taylor v. Stevens*, 946 F.3d 211 (5th Cir. 2019), *aff'd in part and vacated on other grounds by Taylor v. Riojas*, 141 S. Ct. 52 (2020), the Fifth Circuit recognized that a prisoner forced to live in two squalid cells for six days articulated an Eighth Amendment claim. In *Taylor*, the first cell's entire surface—floors, ceilings, windows, walls and water faucet—was covered with massive amounts of feces and emitted a strong fecal odor. *Id.* at 218–19. The second cell was extremely cold and had no water fountain, no bunk, and no toilet—only a drain in the floor that was clogged and smelled strongly of ammonia which plaintiff refused to use because it would spill onto the floor where he had to sleep. *Id.* While being denied facilities (or even a functional drain) within which to urinate, officers refused to escort the plaintiff to the bathroom for a 24-hour period.[78] On those facts, the Fifth Circuit recognized that the plaintiff stated an Eighth Amendment claim, even with the relatively short 6-day duration. *Id.* at 220–21. On writ of certiorari on the qualified immunity issue, the Supreme Court agreed that these horrendous conditions of confinement indeed violated the Eighth Amendment's prohibition on cruel and unusual punishment. *Taylor*, 141 S. Ct. at 53.[79]

---

[78] In ruling, the Fifth Circuit expressly noted that prison officials are not required "to provide a prisoner with a squeaky-clean toilet nor to escort him to the restroom whenever he wishes." *Taylor v. Stevens*, 946 F.3d 211, 225 n.20 (5th Cir. 2019). When, however, the plaintiff is refused a restroom for 24 hours and provided no other sanitary means to relieve himself, the situation is akin to similar circumstances in which the court has previously found violative of the Constitution. *Id.* (citing *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999)).

[79] *See also Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (prisoners regularly forced to live in cells covered with "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles" established an Eighth Amendment violation); *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (prisoner forced to sleep on a wet mattress "in filthy water contaminated with human waste" for ten months amounted to a violation of the Eighth Amendment); *Palmer*, 193 F.3d at 353 (finding 49 prisoners forced to spend night on 20' x 30' work field, without being allowed to leave the area to defecate and urinate, in cold weather, without blankets, jackets or shelter stated Eighth Amendment claim); *Burnette v. Bureau of Prisons*, 277 F. App'x 329, 331 (5th Cir. 2007) (holding that prisoner stated an Eighth Amendment claim based on being required to share a garbage bag as toilet with mentally unstable inmate; officers sealed cell door with tape and refused to remove bag, which emitted odor and leaked sewerage in cell); *Harper v. Showers*, 174 F.3d 716, 719–20 (5th Cir. 1999) (reversing dismissal of claim for injunctive relief based on allegations that weekly cell moves, often into cells that are filthy with feces-smeared in them next to psychiatric patients who scream, beat on the metal toilets, short out the power, flood the cells, throw feces and light fires as such conduct, depending on the facts, may qualify as deprivations of life's basic needs in violation of the Eighth Amendment); *Little v. Keirsey*, 69 F.3d 536, at \*1, \*5 (5th Cir. 1995) (holding that plaintiff stated claim for

In this case, Plaintiff's allegations of a 15-day period in a crowded, but much less objectively unsanitary, holding cell do not rise to the level of a constitutional violation. Plaintiff's alleged conditions–being placed in a cold cell in only a top, bottom and slippers with no underwear, only allowed to shower once a week, urinating on himself three times despite the presence of a toilet, receiving water with every meal and two hot meals and a sandwich every day, sleeping on concrete–do not rise to the level of an extreme deprivation of the type that might offend the Constitution. For that reason, courts in this district have regularly rejected Eighth Amendment claims attacking St. Tammany Parish's holding cell conditions for similar, and even longer, periods of time than that suffered by Plaintiff. *See, e.g.*, *Terry v. Smith*, No. 20-1163 (E.D. La. July 31, 2020) (stating 17 days in holding tank does not rise to level of constitutional violation); *Robertson v. Smith*, No. 20-1614 (E.D. La. June 17, 2020) (rejecting claim based on 16 days in holding cell at St. Tammany Parish Jail); *Hill v. Smith*, No. 20-1042, 2020 WL 2226316, at *1–2 (E.D. La. Apr. 1, 2020) (recommending 18 days in St. Tammany Parish Jail holding cell with no bed or mat too brief to support a constitutional claim); *Allen v. St. Tammany Parish*, No. 17-4091, 2018 WL 558503 (E.D. La. Jan. 2, 2018) (finding plaintiff's claim of 15 days placed in an allegedly overcrowded, unsanitary holding cell, forced to sleep on the floor without bedding and only able to drink water from mold-covered fountain or faucet insufficient to state constitutional claim); *Cf. Baqer v. St. Tammany Parish Gov't*, No. 20-980, 2020 WL 1820040, at *7, *12–13 (E.D. La. Apr. 11, 2020) (denying pretrial detainees' motion for preliminary injunction because they were unable to establish substantial likelihood of success on the merits based on confinement in allegedly unconstitutional conditions for periods of 16 to 19 days).

---

inhumane confinement when he alleged that, for 18 days, he was confined to a cell where the floor was constantly covered in water, urine and excrement from an overflowing toilet in this cell, lack of windows and ventilation caused stench, which inhibited him from eating and made him vomit, his shoes were soaked from the foul mixture, and he developed a body rash from the extreme heat).

## 2.  The Subjective Component

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."[80]  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."[81]

"Deliberate indifference" means that the officials "(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."[82]  But "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they  responded reasonably to the risk, even if the harm ultimately was not averted."[83]  In other words, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."[84]  Given the numerous cases rejecting an Eighth Amendment claim based on the same conditions of confinement for pretrial detainees at the St. Tammany Parish jail, the court cannot say that the defendant was "deliberately indifferent."[85]

---

[80] *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997).
[81] *Whitley v. Albers*, 475 U.S. 312, 319 (1986).
[82] *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quotation omitted).
[83] *Farmer v. Johnson*, 511 U.S. 825, 844 (1994).
[84] *Id.* at 845.
[85] *Cf. Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (holding that, when confronted with the particularly egregious facts of this case, "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house plaintiff in such deplorably unsanitary conditions for such an extended period of time.").

### E.  **The PLRA Requires More Than De Minimis Physical Injury**

Even if Plaintiff could state a constitutional violation, he would not be entitled to recover compensatory damages.  Title 42 U.S.C. § 1997e specifically provides that prisoners are barred from recovering compensatory damages for mental or emotional injuries "unless there is a prior showing of physical injury . . . ."[86]  The "physical injury" required by § 1997e(e) "must be more than de minimis [sic], but need not be significant."[87]

It is the nature of the relief sought, not the underlying substantive violation, that controls:[88]

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] de minimis, would . . . require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).[89]

Temporary pain is insufficient to satisfy this requirement.[90]  A plaintiff is not entitled to compensatory damages without the required physical injury.[91]

---

[86] 42 U.S.C. § 1997e(e); *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997); *Crawford-el v. Britton*, 523 U.S. 574, 596 (1998).

[87] *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Siglar*, 112 F.3d at 193).

[88] *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

[89] *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).

[90] *Sublet v. Million*, 451 F. App'x 458, 459 (5th Cir. 2011) (affirming district court's ruling that temporary pain stemming from numbness and tenderness in left hand and arm insufficient to establish more than *de minimis* injury)

[91] *See Siglar*, 112 F.3d at 193 (holding that § 1997e(e)'s physical injury requirement is coextensive with Eighth Amendment's physical injury standard to constitute cruel and unusual punishment and finding that a sore and bruised ear lasting three days de minimis injury); *Alexander v. Tippah Cty.*, 351 F.3d 626, 631 (5th Cir. 2003) (holding that vomiting and nausea from exposure to build up of feces and urine in backed-up drain pipe was no more than a de minimis physical injury); *Herman v. Holiday*, 238 F.3d 660, 665–66 (5th Cir. 2001) (holding § 1997e(e) bars recovery of money damages for emotional or mental damage absent adequate showing of physical injury in Eighth Amendment claim; fear of contracting future illness from mosquito infested facility, insufficient hot water, cold food, unsanitary eating utensils, cesspool near residential entrance and failure to provide loaner clothes on laundry day cannot transform prisoner's claim for mental and emotional damages into an independent category of damages to avoid bar of § 1997e(e)'s requirement for physical injury); *Harper*, 174 F.3d at 719 (applying § 1997e(e) to bar psychological damages absent allegation of more than de minimis physical injury in § 1983 claim alleging Eighth Amendment violation).

The temporary issues identified by Plaintiff (bruises, soreness, cold symptoms, hemorrhoids) are *de minimis* at best. Accordingly, those injuries fall far short of the physical injury required to recover on a § 1983 claim under the parameters of § 1997e(e).

## IV.    <u>CONCLUSION</u>

Dismissal of plaintiff's claim is proper on the grounds of frivolousness and failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), § 1915A(a)–(b), and 42 U.S.C. § 1997e(c)(1). Dismissal without leave to amend is proper because there is no conceivable, non-frivolous federal claim plaintiff could assert against them consistent with the facts alleged in his complaint, as expanded by the information provided at the *Spears* hearing.

<u>**RECOMMENDATIONS**</u>

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's claims be DISMISSED WITH PREJUDICE as legally frivolous and/or for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), § 1915A(a)–(b), and/or 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[92]

---

[92] 28 U.S.C. § 636(b)(1).

New Orleans, Louisiana, this _____14th_____ day of January, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE